(163 App. Div. 812)

### LYON et al. v. PISER.    (No. 183-40.)

(Supreme Court, Appellate Division, Third Department.    September 9, 1914.)

1. WATERS AND WATER COURSES (§ 156*)—WATER RIGHTS.

In 1828, C. owned a sawmill and water rights connected therewith, located on the east bank of a river, and below the sawmill were a gristmill and certain other mills in which C. had the principal interest, all run by water from a certain dam. C. conveyed the sawmill to B., who subsequently conveyed to defendant. C.'s deed contained an exception and reservation of all the privilege and advantage of all the ground, raceway, water courses, flumes, and water privileges occupied for use of the gristmill and lower machinery, together with the privilege of enlarging the flumes and water courses of the cotton factory sufficiently large to convey the same quantity of water as was then used by the sawmill to the cotton factory or to any other place where it might be wanted. *Held*, that such provision did not retain the title to the land under the sawmill or an exclusive right to the use of the forebay connected with that mill, but merely the right to use them for the benefit of the mills below, within the limits specified, and hence plaintiffs, who had succeeded to the gristmill and lower machinery, were entitled to use the water entering their forebay so far as necessary to run the machinery contemplated in the deed, and defendant was entitled to use the water entering his forebay so far as necessary to run the machinery contemplated in the deed, and in addition the right to surplus water impounded by the dam and coming to the easterly side of the river, not necessary for the operation of plaintiffs' machinery.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 158, 174–183; Dec. Dig. § 156.*]

2. WATERS AND WATER COURSES (§ 154*)—RIGHTS OF WATER IN STREAM—REPAIR OF DAM.

Where certain individuals owned and operated mills by water power on either side of a river, the fact that they contributed to the maintenance of a dam in specified proportions did not conclusively establish that they were entitled to share in the flow of water impounded by the dam in the same proportion.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 167–173; Dec. Dig. § 154.*]

Appeal from Judgment on Report of Referee.

Action by Charles E. Lyon and another against Leonard C. Piser. From a judgment entered on a decision of a referee and from an order granting an extra allowance of costs, defendant appeals. Modified and affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Bratt & Van Wormer, of Argyle (F. A. Bratt, of Argyle, of counsel), for appellant.

C. O. Pratt, of Cambridge, for respondents.

JOHN M. KELLOGG, J. In 1828 Bethuel Church, Jr., owned the sawmill and the water rights connected therewith on the east side of the Battenkill river at and immediately below the dam at Shushan. His sawmill extended from the easterly shore out into the

stream, and from the westerly end of the sawmill to the Lovejoy mill on the westerly side of the river a dam was maintained. Below the sawmill were his gristmill, fulling mill, cotton factory, and other machinery run by the water from the dam. He was the owner of that property, or had the principal interest therein. A forebay extended under the sawmill and conveyed the water to the mills below. The sawmill took its water through an opening about 11 feet wide immediately west of the forebay leading to the mills below and extending from the dam to that forebay. In that year Church conveyed the sawmill property to Binninger; the deed containing the following provisions:.

"Excepting and reserving all the privilege and advantage of all the ground, raceway, water courses, flumes and water privileges now occupied for the use of the gristmill, fulling mill, cotton factory and other machinery now standing near the said sawmill, together with the privilege of enlarging the flumes and water courses of the said cotton factory sufficiently large to convey the same quantity of water as is now used by the said sawmill to the said cotton factory, or to any other place where it may be wanted."

Up to 1891 no controversy arose as to the rights of the parties under the deed. The defendant has succeeded to Binninger's property rights in the sawmill property, and the plaintiffs have succeeded to the property and rights in the other mills and property referred to. In that year the defendant, against plaintiffs' objection, made an opening in the planking of the bulkhead forming the westerly wall of the forebay leading to the plaintiffs' mill, replacing it with a rack, and installed a wheel in a part of the old sawmill, and drew, and continues to draw, water from the bulkhead for that wheel. Since then, in times of low water, the plaintiffs are unable to get sufficient water to operate their machinery, although they are not using wheels of greater capacity than were used at the time of the deed, and have not increased their power. The judgment appealed from determines that the plaintiffs have the right to one-half of the water flowing in the Battenkill and impounded by the dam, and requires the defendant to restore the bulkhead to its former condition and at all times to refrain from taking water from that bulkhead for the use of his property.

[1] By the provision in the deed Church did not retain the title to the land under the sawmill, or the exclusive right to the use of that forebay. He retained the privilege and advantage of them for the use of the mills below, within the limits stated. Evidently at the time of the conveyance there was water enough for all, and the forebay leading to the mills below carried more water than was necessary for the use of those mills. The flow of water in the stream has diminished and the rights of the parties in the water have become material. Under the deed the plaintiffs have the right to use all the water entering their forebay so far as is necessary to run the machinery contemplated by the deed, and the defendant has the right to use all the water entering his forebay so far as is necessary to run the machinery contemplated by the deed, in addition to which the defendant has the right to use the surplus water impounded by the dam and coming to the easterly side of the river which is not re-

quired for the operation of the plaintiffs' machinery as contemplated by the deed.

[2] The owner of the Lovejoy property on the westerly side of the dam is not a party to the action. The evidence indicates that from time to time the owner of the Lovejoy property has paid one-quarter of the expense of repairing of the dam, plaintiffs' predecessors one-half, and defendant's predecessors the other one-quarter. This does not, however, conclusively establish that the owners of the property on the east side of the river are entitled to three-quarters of the flow or of the water impounded in the dam. The provision of the judgment, therefore, that the plaintiffs are entitled to one-half of the flow or impounded water is erroneous, and casts upon the defendant the burden of establishing against the Lovejoy mill that it is not entitled to one-half the flow of the stream and dam. If it should be established that the Lovejoy mill is entitled to one-half the water from the stream and dam, then under this judgment the defendant has no water rights—a condition not contemplated by the deed. The questions to be determined in this case are the relative rights of the plaintiffs and the defendant to the waters coming to the easterly side of the river, and whether the defendant has the right to draw water from the forebay leading to the plaintiffs' mills when it deprives the plaintiffs of water necessary to run the machinery contemplated by the deed. It cannot be said that it was illegal for the defendant to take water from the easterly forebay when plaintiffs suffered no harm therefrom. He, however, exceeds his right when in time of low water he takes water from that forebay and deprives the plaintiffs of the water necessary to properly run their machinery. Their wheels require no more water than is contemplated by the deed. The plaintiffs have no grievance from the fact that the defendant is drawing water from the easterly forebay while they have all the water necessary to run properly the machinery operated by them within the limit contemplated by the deed. The judgment is therefore erroneous so far as it requires the defendant to restore the planking and to refrain at all times from taking water from that forebay. It, however, should be modified by enjoining the defendant from drawing water from said forebay at any time when the conditions are such that by drawing said water he diminishes the flow from the forebay so that the plaintiffs are deprived of sufficient water to effectually operate their wheels actually in use from time to time within the limits contemplated by the deed. It should provide that the defendant may from time to time draw water from such forebay by means of the opening heretofore made by him, when by so doing it shall not affect the efficiency of the plaintiffs' said wheels. It should also be modified by striking therefrom the provision that the plaintiffs own one-half of the water flowing in the stream and impounded by the dam. It should further provide that the plaintiffs are entitled to all the water entering said forebay which is necessary for the operation of the wheels contemplated by the deed, and it should also provide that upon changed conditions either party may apply at the foot of the judgment to the Special Term for its consideration as to whether the court should

then make a direction that the parties shall use the power contemplated by the deed with more modern and efficient wheels.

As so modified, the judgment and the order are affirmed, without costs. All concur, except SMITH, P. J., not voting.